Judge Bauer and I are both delighted to welcome to the bench today our colleague from the Northern District of Illinois, the Honorable Sarah Ellis. We will be hearing the first case today now, U.S. v. Salvador Navarro. Ms. Christensen. May it please the Court, Counsel. Good morning, Your Honors. My name is Joanna Christensen and I represent Mr. Navarro in this appeal. The issue before the Court is the government's breach of a plea agreement. The government has conceded that it breached the plea agreement by failing to recommend a within-guideline sentence. It's not conceded that this was plain error, although under the language of the guidelines 1B.1.1b, it is in fact plain error. The main contention between the parties remaining is whether it affected Mr. Navarro's substantial rights and, of course, whether the fairness, integrity, and public reputation of the proceedings was affected. We, of course, argue that both of those prongs have been met in this case. Mr. Navarro's substantial rights were affected. The applicable guideline range was significantly lower in this case than the departed guideline range. It was 188-235 versus 262-327. The difference in the government's recommendation is more than seven years under those two guidelines. The government's recommendation, of course, is very important to any defendant who's entering into a plea bargain because it's one of the best things they can ask for from the government and one of the things the government is willing to give. Mr. Navarro in this case, in fact, waived his appellate rights except for reasonableness for an outside guideline sentence based on the government's promise to recommend a within-guideline sentence. Of course, in this case, the court was confused about the actual guideline range and said, I don't know if you waived your right to appeal this sentence because I don't know. You'll have to ask your lawyer. So even the district court expressed some concern about where the guideline range actually was versus where he ultimately sentenced him. The court did say that it would impose the same sentence. However, that was based on its upper departure for the manager-supervisor application note two, rather than the government's breach. The court didn't say if the government, even if the government had recommended a sentence within the lower guideline range, I'd still give this higher-than-guideline-range sentence. Of course, the court would also have to justify it differently under Booker, would have to justify it as an above-guideline-range sentence, and I'm not sure, with the government's recommendation being seven years lower, if the court did that adequately in this case so as to make this not affect Mr. Navarro's substantial rights. Ms. Christensen, is it correct that the first mention to the court of this upward departure under 3B1.1 came from the government? Yes. My understanding of the record is it did come from the government. If I'm remembering correctly, the probation officer found that he was a manager-supervisor under the guideline 3B1.1. 3B, I'm sorry. The role in the offense guideline. The role in the offense guideline. I should have it memorized, one would think. But the probation officer recommended that. He challenged that recommendation because he had not, in fact, directed any person in the conspiracy. The issue then became at sentencing whether he had, in fact, directed the assets of the conspiracy, specifically whether he had control over the property. And there was some evidence presented by the government that that was the case, and ultimately the court was kind of equivocal about which way it was going, but ultimately said, no, I'm not going to give the actual enhancement. I'm giving the upward departure. So given this confusing record, I think that Mr. Navarro's substantial rights were affected in this case. Like I said, the guideline range is substantially lower, and the recommendation would have been substantially lower. And I can't believe that the court would not have taken into consideration that the government, if it still recommended the high end of the guidelines, was recommending 235 rather than 320. And the guideline range was 262 to 320. Ms. Christensen, if we ultimately were to find plain error in this case, what do you think the appropriate remedy should be? Mr. Navarro was asking for specific performance of the agreement. He is not asking to rescind his plea agreement in this case. So I know he has the option under this court's case law and believes strongly that that's the remedy he is requesting. One aspect that comes up in these kinds of cases connected to a breach of a promise concerning the government recommendation is whether the case should go back. Sounds almost marital, doesn't it? One of the questions is whether the case should go back to the same judge. Correct. Well, Your Honor, in this case, I've argued other breach cases, and I would say different judge. In this case, I think everybody was confused. I think this is a major conspiracy case. The judge is familiar with all the players in the conspiracy. He sentenced all of them. I believe it would be probably the best for the parties to have it in front of the same judge. It has gone back in front of another, but I don't see the bias necessarily against this defendant in this case that there are in other cases. But you say he's entitled to an enthusiastic recommendation from the government for the lower guideline range. Right, right. Getting on to the last factor, of course, is the fairness, integrity, and public reputation. If the government is arguing that their recommendation doesn't mean much to the district court judge, I have a feeling that's not a road they want to travel. You don't think that's true? I don't think they really think that. That seems to be their argument here. But as a defense attorney, I don't practice in the Southern District Court, but I would be a little hesitant to accept that recommendation from the government. They really don't think the judge is going to listen to it. When we're talking about a waiver of appellate rights, Mr. Navarro has filed some pro se filings with this court in which he wants to raise issues that have been waived by his appellate rights. And had there not been a breach, perhaps we would be in a different situation. He may not have appealed because he would have gotten the sentence that he felt more comfortable with. Again, the fairness and integrity, the government is part of the process, just like I am and the court is, and they need to be bound to their agreements and the plea agreement, even if it was an inadvertent error, as we think that it was in this case. I certainly am not saying that the government did this on purpose, and it was simply a confusion by all parties about how the guidelines worked in this specific situation. Do you think that the government's recommendation, though, influenced the judge, considering that the judge was looking at Mr. Navarro's all of his activities in the conspiracy and made the statement, while I don't think that the role in the offense guideline applies, that I would do this upward departure so that the government's recommendation he sentenced, the judge sentenced Mr. Navarro at the low end. 262. And so it was not close to what the government recommended. The government recommended towards the very high end of the guideline range. Do you think that had the government recommended something, you know, the high end of the range that was there without the departure, that that would have influenced the judge to either not depart up three levels or depart two levels or one level? Well, I think we have a couple issues at play. One is the government did advocate for that upward departure, and there's a portion of my brief whether I question if that was a breach of the plea agreement as well, because they had assumed a different guideline calculation. But when you have the huge gap between numbers that we have in this case, the government's recommendation should have been 235. And even if the judge said, yes, I think he still should get the three levels, which makes it 262, you know, the government's now more than 30 months below that. Perhaps I should reconsider giving the government's recommendation at 235 rather than 320. You know, that huge gap. You're in your rebuttal time. Oh, I see that, Your Honor. Unless the court has further questions right now, I will respond in rebuttal. Thank you. Thank you, Ms. Christensen. Mr. Constance for the government. May it please the Court. To make this very clear at the beginning, as defense counsel pointed out, this is a case of an inadvertent breach of the plea agreement. This was not malicious. This was not intended. It was a regrettable error on the part of the prosecution. If we could do it again, we would go back and go within the guidelines. However, because this was such a weird nuance in the sentencing guidelines, this was an error that was not realized at sentencing by the prosecution, by the defense, by the judge. It wasn't even realized by defense following the sentencing when they wrote in their Anders brief to this court, saying that this case is frivolous. They did not believe there was any error. It was not until this court pointed it out in the Anders brief that the parties came to understand the error in it. To say that this is a miscarriage of justice is just not the case that it is. Because this was not realized, it is plain error review. That gives the defense counsel, as this court had phrased it, the remarkably demanding burden of showing that but for the breach that the district court would have given a different sentence. We routinely treat errors in guideline calculations as plain errors, right? Under the review, this court has in the past, such as in the Diaz case, found a plain error for sentencing miscalculations. Could you address what you think to be the importance of the government's recommendations in sentencing? Sure. That is, as the defense counsel pointed out, a part of the plea agreement. Absolutely. A defendant wants to go into the plea, or they're more likely to go into the plea, if they have prosecution saying that they're going to recommend between X and Z amount. However, it's a very fact-specific, case-intensive focus that we review under the plain error. It's simply because the breach does not mean that the breach was, in and of itself, material. In this case, this was a case of a 20- How could this one not have been material, given the huge discrepancy between the government's actual recommendation and the promised recommendation? Because I believe, the government believes, the facts of this case show that there has not been prejudice. This was a 26-defendant indictment. Chief Judge Reagan was well aware of all the defendants. In the plea agreement itself, the government said what they believed the range would be, and that was what they said they believed, at 262 to 327. The defendant realized what the prosecution was going to argue for, and the application note, all the parties believed, made it so that the prosecution could argue. This was no surprise. Except that under the note, that was a departure. Correct. And that was argued by the government to the judge, saying, okay, if you don't agree that the role in the offense enhancement applies, look at the application note, and you can depart if you find that he didn't supervise any individuals. So that was first brought up by the government as an alternative theory, as a way to almost salvage the role in the offense enhancement going south. The prosecution went into sentencing arguing for the 3B1.1 managerial point, and at the very beginning of after the witnesses had come in for sentencing, the judge on page 116 makes clear at the very beginning that he's going to go for the upper departure. It wasn't until after that that the prosecution then says, well, yeah, we agree on the upper departure. But they did so. Excuse me. I've got the government proposing that at page 109 before the judge made the point. Right. They had brought that up as an alternative. They did so. So the government was the first to propose the upward departure. Okay. Yeah. Yes, I agree. I agree. How is that not a breach of itself, of the plea agreement? We do agree that was a breach. We agree that the government was incorrect in arguing for a higher than 235 months. Without a doubt, the government has conceded to that in its brief. We're arguing that there has not been prejudice, as shown by the Chief Judge Reagan's statements to the court. Could you address Puckett, the Supreme Court's decision in Puckett, which tells us to apply plain error in such cases, but do you think that you talk about the facts in Puckett where you've got the rather extraordinary circumstances, somebody who went on to commit more crimes and was claiming the benefit of acceptance of responsibility. I mean, that's an easy case for the government, right? If I recall the facts correctly, that was in the middle between sentencing. I mean, between plea agreement and sentencing, he committed a new crime, and they're saying that does not apply anymore, and the court said, you know, this makes no sense. No judge would give that guy acceptance of responsibility. Correct. And that's why they applied plain error review to say no plain error. But that's a pretty extreme case. Right. This is, you know, I've got to say, when you're talking about the government recommendation with respect to what amounts to recommending an upward departure, it's hard to discount that. Certainly. It's regrettable. But the key question is the defendant's burden to show that if this court sends it back down, what is Judge Reagan going to do? And Judge Reagan made it very clear that he is well aware of all the facts in this case. He evaluated the sentences that he gave to the other defendants that he's seen. He is intimately involved in this indictment of the 26 individuals, and he pointed out, as you mentioned earlier, that even if I couldn't, speaking for Judge Reagan, even if he couldn't find the upward departure, he still would have given this sentence. He made it very clear that his review of the facts himself and his knowledge of other similar cases, he would have given the 262 months. That's the kind of language that we would give a lot of weight to if we were talking about a subtle guideline issue. The guidelines are complicated. They can be arbitrary. But here we're talking about, in essence, whether the government keeps its promises. I guess I have trouble with that. Then I think we go to the fourth problem. Particularly because of the ways in which parties' recommendations and the guidelines, and especially the government's recommendations, wind up anchoring or framing choices that district judges make. That's part of the premise in the double jeopardy line of cases. Here we've got Judge Reagan imposing a sentence that essentially splits the difference between the parties' recommendations. Correct. Well, the government recommended 320. He received 262. The defense counsel just recommended on the low end of the guidelines. However, they didn't address which guidelines they were referring to. So I'm unclear on that. But is this a miscarriage of justice? Has the fourth prong, as the Supreme Court and Alano said, seriously impugned the fairness, integrity, public reputation of judicial proceedings? Well, but isn't it important for just the concept of justice that the government follows through on the promises that it makes? In the ideal situation, the government would have recommended 235 months, yes. And shouldn't every situation be the ideal situation? So where there's a breach, and it's not a question of whether there's been a breach, but there's been a breach, then it should go back and be corrected. But the question in this case is, if it goes back, will there be any difference? And that's the defendant's burden to show that. Easy way to find out. Well, we could find out, yes. And briefly, I'll point out what you had mentioned on circuit court rule 36 for changing judges, and this court has set a very high standard on that. So we agree with defense counsel that it should go back to Judge Reagan. Actually, in these kinds of cases, it's pretty routine to send it back to somebody new, but the idea being you can't unring the bell. But I also appreciate what defense counsel had to say about Judge Reagan's extensive familiarity with the entire conspiracy and fitting different defendants' sentences in together with others. If there are no further questions. Thank you very much, Mr. Constance. Ms. Christensen, rebuttal. Thank you, Your Honors. I'll address a little bit what the government says. It was not my reading of their brief that they were conceding that they breached the plea agreement by advocating for the upper departure. But if they have now, I think that that is even stronger in our defense, because not only is it simply the recommendation, it's the advocating and giving the judge the road to travel down with this upper departure, which honestly I've never seen applied before. Usually they're going to get it for their personal supervision of other people. It's a rare departure, probably adding to the fact that nobody caught the difference in the guideline range problem before, including myself. And we're all human here. We all make mistakes. And I don't think that Mr. Navarro necessarily should be held to an even higher standard because the professionals involved here didn't do their job 100% accurately that day. The fourth prong is the strongest argument. I think that judicial proceedings are in question when the government recommends a sentence seven years higher than they were supposed to and then says that it doesn't make a difference in front of the district court. So I see I am out of time. Unless the court has further questions, I will ask you to reverse and remand. Thank you very much, Ms. Christensen. Thank you to both counsel. The case will be taken under advisement.